**SO ORDERED.**

**SIGNED this 16th day of July, 2012.**



*Dale L. Somers*
Dale L. Somers
United States Bankruptcy Judge
_____

Opinion Designated for Electronic Use, But Not for Print Publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: | |
| EDWARD WILLIAM BANGE, | CASE NO. 08-40156 |
| DEBTOR. | CHAPTER 7C |
| EDWARD WILLIAM BANGE, | |
| PLAINTIFF, | |
| v. | ADV. NO. 11-7050 |
| DAVID KLAASSEN, | |
| DEFENDANT. | |

**OPINION GRANTING THE DEFENDANT'S MOTION**

**FOR SUMMARY JUDGMENT**

This proceeding is before the Court on a motion for summary judgment filed by

Defendant David R. Klaassen. He appears by counsel Debra Egli James of Hampton & Royce, L.C. Plaintiff-Debtor Edward William Bange opposes the motion, and he appears by counsel Caleb Boone. The Court has reviewed the relevant materials and is now ready to rule.

**Facts**

The Court finds only the following uncontroverted facts to be necessary to its decision.

The Debtor filed a Chapter 12 bankruptcy petition on February 20, 2008. At that time, his attorney was Defendant Klaassen.

Early in August 2009, the Debtor sent the Chapter 12 trustee a package which contained a number of counterfeit money orders, and directed the trustee to pay his debts with them. The trustee forwarded the documents to the United States Trustee's Office, but heard nothing further from that office about them. The trustee also contacted Klaassen, who said he had admonished the Debtor to make no further extralegal attempts to deal with his debts, and believed the Debtor would, in the future, comply with his obligations under the Bankruptcy Code. The trustee took no other action at that time about the money orders.

Later in August 2009, the Debtor filed his first Chapter 12 plan. The plan drew objections from creditors Bank of America and CNH Capital. Klaassen worked with the objecting creditors and ultimately agreements were reached that resolved the objections and would allow the Debtor's plan to be confirmed. A hearing on confirmation of the

plan was held on January 8, 2010.  At that time, testifying under oath, the Debtor indicated he was not comfortable with the plan because, although Klaassen was satisfied that Bank of America and CNH Capital had properly proven the debts the Debtor owed them, he believed they should be required to present additional evidence of the debts. Documents he filed later made it appear he thought the creditors loaned him only "credit," not money, and that somehow meant he was not obliged to repay them.  The hearing was adjourned, and the plan was not confirmed.

On February 4, 2010, acting without Klaassen's help, the Debtor filed a document entitled, "Termination and Reappointment of Trustee by Affidavit," which was entered as docket number 282.  The document accused an unnamed trustee of a trust purportedly established by the Debtor of acting in various improper ways, and declared the Debtor's intent to terminate that trustee and replace him with James Thomas McBride of Columbus, Ohio.  McBride subsequently filed several documents with the Court which were full of nonsensical legal jargon, and attempted to order the Court and others to take various actions, under threat of sanctions.  The Court understood McBride's theories to be based on a concept loosely known as "sovereign citizens," which believers seem to think makes them immune to the established legal system that is in effect in the United States.

On February 11, 2010, Klaassen filed a motion to withdraw as the Debtor's attorney, saying they no longer had a working relationship because the Debtor was not returning his phone calls and emails, apparently disagreed with Klaassen about how to proceed with various pending matters, and was apparently avoiding paying Klaassen's

fees and expenses. After proper notice was given, the Court allowed Klaassen to withdraw.

The Chapter 12 trustee filed a motion to dismiss or convert the case. The Court held an evidentiary hearing in March 2010, at which the Debtor did not appear. After hearing the other parties' evidence, the Court ordered the case converted to Chapter 7. In a written opinion, the Court said:

> The Debtor's attempt in August 2009 to pay his debts with counterfeit money orders was a clear attempt to actually defraud the Chapter 12 Trustee and his creditors. Further, the Debtor's refusal on January 8, 2010, or any time since then, to ask the Court to confirm the negotiated plan which he approved is proof that at least since August 2009, the Debtor had no intention of trying to achieve a successful conclusion to this case by obtaining confirmation of a Chapter 12 plan.
> The Tenth Circuit has said, "Subsequent conduct is often probative of one's intent on a prior occasion."[1] The fact the Debtor's August 2009 attempted fraud came shortly before his plan of reorganization was finally filed suggests his intent was merely to delay his creditors as long as possible, and never to comply with any plan to actually repay them. His return in January and February of this year to his ineffectual extralegal activities shows that at least since August 2009, he has not truly intended to reorganize within the confines of Chapter 12. Instead, he pretended to follow his attorney's advice about pursuing a legitimate plan of reorganization so he could continue to enjoy the relative freedom of action he had during the eighteen months between filing his bankruptcy petition and filing his Chapter 12 plan, and to delay his creditors for what turned out to be five to six more months. Then, beginning with his testimony at the January 8, 2010, confirmation hearing, and most clearly by filing docket number 282 on February 4, 2010, he revealed his true intent not to reorganize. The Court agrees with the reasoning of [*In re*] *Caldwell*[2] . . . that specific damages and reliance by the moving party is not required to permit a finding of fraud under § 1208(d). In a case like this one, damage

---

[1] *Farmers Co-Operative Assoc. v. Strunk*, 671 F.2d 391, 395 (10th Cir. 1982).

[2] 101 B.R. 728 (Bankr. D. Utah 1989).

4

to the bankruptcy process is sufficient. The damage in this case is the inability of the Court, the Trustee, and the creditors to rely on the Debtor's good faith in negotiating and achieving confirmation of a Chapter 12 plan.[3]

Based on the finding of fraud, the Court converted the case to Chapter 7.

Later, the Debtor appeared to reverse course, and helped the government put a stop to McBride's activities. The Court granted the Debtor's motion to reconvert his case to Chapter 12, saying:

> In April of this year, the Court decided to convert this case from Chapter 12 to Chapter 7 on the ground the Debtor had committed fraud during the case. The Court came to this conclusion in large part because of the Debtor's involvement with an antigovernment agitator, and actions the Debtor took based on that man's illegal advice. After the Court converted the case, the Debtor repented and helped the U.S. Marshal's Service take steps to end the agitator's activities. The Court is now convinced the Debtor wishes to act appropriately to reorganize his debts under Chapter 12, and should have that opportunity. The Debtor is warned, however, that the Court will not be so lenient with him in the future if he shows any inclination to return to such improper activities.[4]

Before allowing the reconversion, the Court required the Debtor to find an experienced bankruptcy attorney to help him proceed in Chapter 12, which he did.

The Debtor appeared to accept the need to participate properly in his bankruptcy case, and his new attorney pursued efforts to reorganize his finances. On May 27, 2011, the Debtor filed a motion seeking approval of a new settlement agreement he had reached with creditors Bank of America, CNH Capital America, and Deere and Company, and with Darcy Williamson, who had served as the Chapter 7 trustee the first time the case

---

[3]*In re Bange,* 2010 WL 1418410 at *4 (Bankr. D. Kan. Apr. 5, 2010).

[4]*In re Bange*, 2010 WL 3829632 at *1 (Bankr. D. Kan. Sept. 23, 2010).

was converted to that chapter. No potential claim the Debtor might have against Klaassen was mentioned in the settlement agreement, or otherwise disclosed to the parties to the agreement. On June 7, 2011, the Debtor filed an amended Chapter 12 plan in which he proposed to reorganize his debts. This plan did not mention any cause of action against Klaassen, and said Klaassen's administrative claim for fees would not be treated under the plan because it had already been paid. The amended plan also incorporated the settlement with Bank of America, CNH Capital America, Deere and Company, and Williamson. On July 15, 2011, the Court entered an agreed order confirming the Debtor's amended Chapter 12 plan. Still, the Debtor had not disclosed in any document filed with this Court any potential claim he might have against Klaassen.

Yet on June 8, 2011, the day after he filed his amended Chapter 12 plan, the Debtor had sued Klaassen in a Kansas state court. Klaassen was not served with process in the suit until September 6, 2011, and after he was finally served, he removed the suit to this Court on October 4, 2011. According to the petition the Debtor filed to commence the suit, Klaassen had made clear to him that while he was in bankruptcy, he had to contact Klaassen before engaging in any sales, forward contracting, or hedging of growing crops, crop commodities, or products of crops. In June 2008, the Debtor claims he carefully studied the corn market and his own crops, and determined the market price in Kansas for corn was reaching an all-time high. Consequently, he wanted to immediately sell or forward contract all of his 2008 corn crop and portions of his anticipated 2009 and 2010 corn crops. He therefore called Klaassen's office and spoke to

6

the legal secretary (who is also Klaassen's wife), and asked her to have Klaassen call him to discuss the proposed corn transactions. The Debtor claims he spoke to Klaassen's wife several times over the next few days and emphasized his need to talk to Klaassen. Ultimately, he contends he was not able to talk to Klaassen until about three weeks after his first call and by that time, the corn price had greatly decreased. He alleges Klaassen's failure to contact him quickly cost him $750,000 in profit he would have made if Klaassen had timely returned his calls and approved his proposed sales. The Debtor seeks to recover that alleged lost profit from Klaassen as damages based on alternative theories of breach of contract and negligence.

On July 28, 2011, the Debtor filed a motion with this Court to approve his employment of Caleb Boone to represent him in a potential malpractice claim against Klaassen. This is the first document filed with this Court that mentions any possible claim against Klaassen. Even though the Debtor's petition had been filed in state court almost two months earlier, the motion said, "It is anticipated this claim will be pursued through state court." In response to Klaassen's motion for summary judgment, the Debtor said:

> I have never had any intention of attempting to exclude the potential recovery in this case from the assets subject to my bankruptcy. I desire to fully comply with the law and to list and include this case and claim as an asset within the proper bankruptcy schedules as part of the assets in my bankruptcy. I requested permission from the presiding judge in my bankruptcy to employ Caleb Boone as my Attorney in this case precisely because I desired and do desire to fully disclose my activities in conjunction

with this lawsuit, to the bankruptcy court and the bankruptcy judge.[5]
Given the Debtor's prior activities in this case, the Court has little reason to believe his assertion that his motives concerning the claim were pure. The Debtor already believed in the summer of 2008 that Klaassen had caused him to miss an opportunity to make a substantial profit by failing to return his calls for three weeks, so the alleged wrongdoing was not unknown to him. Perhaps somewhat understandably, he did not disclose his possible claim against Klaassen to anyone involved in his bankruptcy case while Klaassen continued to represent him, negotiated a settlement with his main creditors, and filed a plan of reorganization incorporating that agreement. But the Debtor continued to remain silent about the claim even after (1) Klaassen withdrew from the representation, (2) the case was converted to Chapter 7 and reconverted to Chapter 12, (3) the Debtor hired a new attorney who negotiated a new settlement with his main creditors and the former Chapter 7 trustee, and filed an amended plan of reorganization incorporating the agreement, and (4) the amended plan was confirmed, binding the Debtor as well as his creditors to its terms, pursuant to § 1227(a) of the Bankruptcy Code.

When the Debtor's plan was confirmed, he made a few payments that were due immediately on confirmation, but has otherwise made no payments pursuant to the plan. He made a direct payment to Deere and Company and paid the trustee fee that was due on that payment. On October 23, 2011, the Debtor had over $438,000 in the bank. His first

---

[5]Adv. No. 11-7050, Dkt. no. 26-1 at ¶ 6 (Affidavit of Edward William Bange, Plaintiff, dated Apr. 9, 2012).

payments to the Chapter 12 trustee under his confirmed plan were due on December 31, 2011, and totaled only $136,000. But the Debtor did not make those payments, and offered no explanation why they were not made. And the money he had in the bank in October 2011 is gone, but he has not explained what happened to it.

On November 30, 2011, the Debtor sued his second attorney, among others, in federal district court in Wichita, so the attorney moved to withdraw from continuing to represent him in his bankruptcy case. This suit also presses incomprehensible and ineffectual sovereign-citizen theories. The Court granted that motion in January 2012.

In April 2012, Bank of America and CNH Capital America filed a motion to compel the Debtor to comply with his confirmed plan. The Chapter 12 trustee filed a motion to dismiss based on the Debtor's failure to make the payments required by his plan. Two weeks later, the Debtor filed what he called a "voluntary-withdrawal" of his bankruptcy filings, and a few days after that, filed a supposedly supporting document. These documents revealed that the Debtor was once again asserting unusual and untenable legal theories. The Court considered these new pleadings to be asking for a voluntary dismissal of the Debtor's bankruptcy case. Klaassen soon filed a motion to reconvert the Debtor's bankruptcy case to Chapter 7.

The Court held an evidentiary hearing on all these matters on May 17, 2012, and decided to convert the case back to Chapter 7. As the Court found at that time, the Debtor was again relying on "sovereign citizen" concepts. The Court concluded the Debtor had never truly renounced the sovereign-citizen theory and never intended to comply with his

9

confirmed Chapter 12 plan, but just intended to use his bankruptcy case to delay his creditors. The Court once again converted the case to Chapter 7 because of the Debtor's fraud.

On January 31, 2012, Klaassen moved for summary judgment in the state court lawsuit he had removed to this Court. He argues the Debtor's claim against him is barred by waiver, estoppel, judicial estoppel, acquiescence in a judgment, and claim and issue preclusion. In response, the Debtor argues simply that he never intended to waive or abandon his claim against Klaassen, and that he intended to inform the bankruptcy court of and account for the claim. He does not explain how he can account for the claim now, after he has already had a settlement with his main creditors approved, and had his amended Chapter 12 plan confirmed.

**Discussion**

**1. Summary judgment standards.**

Under the applicable rules of procedure, the Court is to grant summary judgment if the moving party demonstrates that there is "no genuine issue of material fact" and that the party "is entitled to a judgment as a matter of law."[6] The substantive law identifies which facts are material.[7] A dispute over a material fact is genuine when the evidence is such that a reasonable factfinder could resolve the dispute in favor of the party opposing

---

[6] Fed. R. Civil P. 56(c), made applicable by Fed. R. Bankr. P. 7056.

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

10

the motion.[8]  In adjudicating disputes, bankruptcy courts usually both determine the law and find the facts.  In deciding a summary judgment motion, though, the Court is limited to its role of deciding legal questions, not weighing the evidence and resolving factual disputes, but merely determining whether the evidence favorable to the non-moving party about a material fact is sufficient to require a trial[9] at which the Court would act in its factfinding role.  Summary judgment is inappropriate if an inference can be drawn from the materials properly submitted either to support or oppose the motion that would allow the non-moving party to prevail at trial.[10]

The substantive law's allocation of the burden of proof also affects the Court's analysis of a summary judgment motion.  The party asking for summary judgment has the initial burden of showing that no genuine issue of material fact exists.[11]  But if the moving party does not have the burden of proof on a question, this showing requires only pointing out to the Court that the other party does not have sufficient evidence to support a finding in that party's favor on that question.[12]  When such a showing is made, the party with the burden of proof must respond with affidavits, depositions, answers to interrogatories, or admissions sufficient to establish that a finding on the question could properly be made in

---

[8]*Id.*

[9]*Id.* at 249-50.

[10]*See id.* at 248.

[11]*Shapolia v. Los Alamos Nat'l Lab.,* 992 F.2d 1033, 1036 (10th Cir. 1993).

[12]*Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

11

the party's favor at trial.[13]

**2.      Judicial estoppel standard.**

Although Klaassen has raised a number of arguments, the Court will discuss only judicial estoppel, which is a sufficient ground to grant his motion for summary judgment. Before 2001, the Tenth Circuit rejected the doctrine of judicial estoppel.[14] However, in 2001, the Supreme Court applied the doctrine in *New Hampshire v. Maine*, indicating the doctrine is "intended to prevent 'improper use of judicial machinery'" and may be invoked by a court in its discretion.[15] In 2005, in *Johnson v. Lindon City Corporation*, the Tenth Circuit recognized that *New Hampshire* had "altered the legal landscape" concerning judicial estoppel, and proceeded to apply the doctrine.[16]

Even more important for purposes of this case, the Tenth Circuit has approved the application of the doctrine to bar a debtor in bankruptcy from pursuing a claim after he had obtained bankruptcy relief without disclosing it. In *Eastman v. Union Pacific Railroad Company*, the Circuit affirmed a district court ruling that a debtor who received a bankruptcy discharge without disclosing a personal injury claim was thereafter

---

[13]*Celotex,* 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

[14]*See,e.g.*, *United States v. 162 MegaMania Gambling Devices*, 231 F.3d 713, 726 (10th Cir. 2000).

[15]532 U.S. 742, 750 (2001) (quoting *Konstantinidis v. Chen*, 626 F.2d 933, 938 (D.C. Cir. 1980)).

[16]405 F.3d 1065, 1068-70 (10th Cir. 2005).

12

judicially estopped from pursuing the claim.[17] The Circuit cited cases from several other circuits where the courts inferred a deliberate effort to manipulate the judicial system because the debtor had knowledge of an undisclosed claim and a motive to conceal it.[18] The Circuit agreed it was nearly always appropriate to apply judicial estoppel against a debtor who obtained bankruptcy relief and then later tried to pursue a previously undisclosed claim for his or her own benefit.[19] The Circuit read *New Hampshire* to identify three factors that affect the decision whether to apply judicial estoppel in a particular case, namely:

> First, a party's subsequent position must be "'clearly inconsistent'" with its former position. [*New Hampshire*, 532 U.S. at 750]. Next, a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position, "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled[.]" *Id. (emphasis added) (internal quotations omitted).* Finally, the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped. *Id.* at 751.[20]

The Court will consider these factors in deciding whether judicial estoppel should apply in this case

**3.     Judicial estoppel should bar the Debtor from pursuing his claim against**

---

[17]493 F.3d 1151, 1156-60 (10th Cir. 2007).

[18]493 F.3d at 1157-58 (citing *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1287 (11th Cir. 2002); *Cannon-Stokes v. Potter*, 453 F.3d 446, 449 (7th Cir. 2006); *Payless Wholesale Distrib., Inc., v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir. 1993); *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600-01 (5th Cir. 2005); *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001)).

[19]*Id.*

[20]*Id.* at 1156.

13

**Klaassen.**

The Debtor's claim against Klaassen arose in June or July of 2008, after he filed his Chapter 12 petition but before he filed his original Chapter 12 plan, and before his case was first converted to Chapter 7 in April of 2010. Consequently, under § 1207(a)(1), the claim became property of his bankruptcy estate, just as it would have been if it had arisen before he filed bankruptcy. Under § 1225(a)(4), for a Chapter 12 debtor's plan to be confirmed, it must propose to distribute to unsecured creditors not less than the amount they would be paid if the debtor's estate were liquidated under Chapter 7 "as of the effective date of the plan."[21] The Court believes the effective date of the Debtor's plan could not have been before he first filed it, so his claim against Klaassen would have affected the liquidation analysis required by § 1225(a)(4).

Neither the Debtor's settlement with Bank of America, CNH Capital, Deere and Company, and Williamson, nor his amended Chapter 12 plan mentioned any claim against Klaassen for malpractice or breach of contract. The Debtor has not suggested that such a claim was disclosed in any pleading he filed before those documents, was disclosed to any of the parties he settled with, or was disclosed to anyone in any other way before he filed his application to hire attorney Boone to represent him in a lawsuit against Klaassen. Taken together, the Debtor's pleadings and other activities in his bankruptcy case constituted an ongoing representation that he had no claim against

---

[21]See Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy, 4th ed.*, § 160.1 at ¶¶ 3-17 (Revised June 7, 2004) (discussing different approaches to determining proper interaction between §§ 541, 1306, and 1325(a)(4), provisions that mirror §§ 541, 1207, and 1225(a)(4)).

14

Klaassen that he had not disclosed or provided for in his plan. His effort to sue Klaassen now is clearly inconsistent with that representation. And the Court's confirmation of his plan constituted a judicial acceptance of his position that he had no such claim. Under § 1227(a), the provisions of the Debtor's confirmed plan are binding on him and his creditors. Section 1227(b) and (c) provide that without a contrary provision in the plan or order confirming the plan, confirmation of the plan vested all property of the estate in the Debtor, and that the property vested free and clear of the claims of creditors provided for by the plan. The Debtor's amended plan provided for his assets to revest in him on confirmation, free and clear of any claims of creditors except those provided for by the plan and those liens retained and continued under the plan. Because the claim against Klaassen was not mentioned in the settlement with his creditors, or in his plan or the confirmation order, these provisions would vest the claim in the Debtor free and clear of the claims of his creditors that are provided for by the plan, clearly giving him an unfair advantage with respect to his creditors unless judicial estoppel is applied against him.

Although the Debtor has not mentioned it, the Court has considered the possibility that he could seek to modify his plan under § 1229(a) to account in some way for his claim against Klaassen. Subsection (1) of that provision authorizes a debtor to ask to modify a confirmed plan to increase the amount of payments on claims provided for by the plan. However, in *Eastman*, the Tenth Circuit made clear a debtor's failure to disclose a claim should not be excused even if the debtor's creditors are made whole after the claim is discovered. In that case, after the claim was revealed, the trustee was able to

15

settle with some of the defendants and obtain enough money to pay all allowable claims.[22] The Circuit said this fact was "inconsequential" because "[a]llowing [the debtor] to 'back up' and benefit from the reopening of his bankruptcy only after his omission had been exposed would 'suggest[] that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets.'"[23] So when, as in this case, a debtor offers no acceptable reason for his failure to disclose an asset such as a tort claim for damages, applying judicial estoppel to bar him from pursuing the claim is the proper sanction.[24]

**Conclusion**

For these reasons, Defendant Klaassen's motion for summary judgment will be granted. Judicial estoppel bars the Debtor from pursuing his claim against Klaassen.

The foregoing constitutes a decision under Rule 7056 of the Federal Rules of Bankruptcy Procedure and Rule 56(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by Bankruptcy Rule 7058 and Civil Rule 58(a).

# # #

---

[22]493 F.3d at 1155.

[23]*Id*. at 1160.

[24]In an unpublished decision, the Tenth Circuit even went so far as to reject a district court's proposed alternative remedy for judicial estoppel of distributing any recovery on a Chapter 13 debtor's undisclosed claim among her creditors, ruling that dismissal of the debtor's claim was the proper remedy. *Autos, Inc., v. Gowin*, 244 Fed. Appx. 885 at 888 & 891-92 (10th Cir. Aug. 9, 2007).

16